**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VICTOR SANCHEZ on behalf of himself and all other plaintiffs similarly situated, <br>   Plaintiffs, <br><br>v. <br><br>GOLD STANDARD ENTERPRISES, INC. d/b/a Binny's Beverage Depot <br>   Defendant. | )<br>)<br>)<br>)<br>)   Case No. 21-cv-03349<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S REVISED UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF
CLAIMS PURSUANT TO FED.R.CIV.PRO. 23.**

Plaintiff Victor Sanchez ("Plaintiff"), on behalf of himself and all others similarly situated, for this Plaintiff's Revised Unopposed Motion for Preliminary Approval of Class Action Settlement and for Certification of Claims Pursuant to Fed. R. Civ. Pro. 23 states as follows:

**I. INTRODUCTION**

This Court denied Plaintiff's previous Motion for Preliminary Approval citing concerns about the notice complying with FLSA and Class requirements. Based on this Court's order, the Parties have re-evaluated and revised sections of the Parties' agreement and proposed notice to alleviate the Court's concerns. The proposed class settlement is appropriate and preliminary approval should be granted.

**II. THE REVISED AGREEMENT AND PROPOSED NOTICE.**

The Parties revised the agreement by adding the requirement that the signed consents on the settlement checks be filed with the Court within 200 days of the checks being issued. See Exhibit B, ¶ 41. To that end, the Parties added the following language to the consent: "I agree my consent will be filed in the Northern District of Illinois that the signor agrees the consent will be

filed with the Court." Id. ¶ 39.

Moreover, the Parties modified the Notice to clarify that settlement class members who do nothing will be releasing "your IMWL claims against Defendants for unpaid overtime wages related to Temporary Pandemic Pay or Temporary Bonus Pay" and, further, "[b]y cashing or depositing the settlement check you will be joining the FLSA suit and be releasing your federal law claims under the FLSA". See Exhibit C. The notice also explains that if class members sign their checks, their "consent will be filed with the District Court" and if they do not cash or deposit their checks, then "you will not be releasing your FLSA claims." Conversely, the modified notice clarifies that that Class members who exclude themselves from the settlement will not receive any settlement payment and will not be "releasing any claims under the IMWL or FLSA". Id. In this way, settlement members are given the opportunity to decide to opt-out of the IMWL class settlement by excluding themselves from the settlement class and are given the opportunity to opt-in to the FLSA settlement by signing and cashing their settlement checks.

### III. THE PROPOSED CLASS SETTELMENT PROCEDURE IS APPROPRIATE.

Rule 23 class settlements with FLSA releases upon Class members negotiating their settlement check is appropriate and this settlement mechanism has been approved numerous times by courts in this District. *See Wolfe v. TCC Wireless, LLC,* 2018 WL 11215318, at *6 (N.D. Ill. Mar., 12, 2018) (granting final approval where FLSA release upon "Class Members and Opt-in Plaintiffs … negotiat[ing] their settlement checks."); *McCue v. MB Financial, Inc.,* 2015 WL 4522564, at *4 (N.D. Ill. Mar. 2, 2016) (approving settlement as fair and reasonable when "all Released Federal Law Claims by all Class Members who negotiate their Settlement Checks." And "Class Members who negotiate their Settlement Checks also irrevocably consent to join and opt-in to the FLSA collective action."); *Besic v. Byline Bank, Inc.,* 2015 WL 13763028, at *3 (N.D.

Ill. Oct. 26, 2015) ("Any Eligible Class Member who signs and cashes or otherwise negotiates a Settlement Check shall irrevocably consent to join or "opt-in to" this lawsuit as a plaintiff and shall release and wage and hour claims of any kind"); *Young v. Rolling In The Dough, Inc.,* 2020 WL 969616 *2 (N.D. Ill. Feb. 27, 2020) (approving settlement where "Class Members who cash or otherwise negotiate their checks" agree to the release printed on the back of the settlement check.); *Sanchez v. Roka Akor Chicago, LLC,* 2017 WL 1425837, at *1 (N.D. Ill. April 20, 2017) (approving FLSA settlement where "[a]ll persons in the Settlement Class who negotiate (i.e., cash or deposit) a Settlement Check shall be deemed to have consented to join the litigation and shall be a party to the case under the FLSA."); *Zolkos v. Scriptfleet, Inc.,* 2015 WL 4275540 (N.D. Ill. July 13, 2015).

The proposed class settlement here mirrors previously approved settlements and, as such, is appropriate and should be approved in light of the Parties' revisions. Under the proposed notice Rule 23 Class members are given opportunity to opt-out of the settlement if they do not wish to participate. These Rule 23 Class members, who are also all of the potential FLSA members, join the FLSA suit and release their claims by signing the release language on each check. This settlement exclusively involves Illinois workers, so every potential FLSA member is also a Rule 23 Class member. If a Settlement Member opts out of the Class, then they are not a Rule 23 Class member and will receive no settlement payment. If they do not opt-out then they are a member of the Rule 23 Class and IMWL claims are released. However, they have not joined the FLSA suit and are not released from FLSA claims until they sign the settlement check. If they do not sign the settlement check, then they are not agreeing to be released from the FLSA. Under the revised agreement, all signed consents will be filed with the Court within 200 days of the issuance of the checks.

## IV. THE PROPOSED CLASS SETTELMENT.

Defendant agrees to pay $220,617.00 into a class settlement fund. This amount is referred to as the Gross Settlement Amount in the Parties' Settlement Agreement. The allocation of the Gross Settlement Amount is as follows and is based on payroll information provided by Defendant.

**1). Class Members Receive 100% of Alleged Unpaid Overtime Wage:**

The alleged unpaid overtime wages were calculated from Defendant's payroll data for the period of 3/15/20 through 5/8/21. This was the period employees received the Pandemic Pay and Temp. Bonus. As explained above, Plaintiff alleges the Defendant miscalculated overtime for the named Plaintiffs and each Class Member by failing to include this additional compensation when calculating the regular rate of pay for overtime purposes during certain pay periods. <u>Class members are receiving 100% of these alleged unpaid overtime wages</u> before attorney fees and costs, administrator fees and costs and service awards. Additionally, the settlement creates a floor wherein the minimum gross award any class member will receive is $16.75.

**2). Class Members Also Receive Liquidated Damages available under the Fair Labor Standards Act and Statutory Damages Under The Illinois Minimum Wage Law:**

The FLSA allows an amount equal to overtime damages be awarded as liquidated damages. Additionally, the Illinois Minimum Wage Law ("IMWL") allows for the recovery of treble overtime damages and a 5% monthly penalty on unpaid overtime wages. Here, class members will receive gross settlement payments of not only their alleged unpaid overtime wages, but also an equal amount representing FLSA liquidated damages, plus another equal amount representing the treble damages available under the IMWL, in addition to 5% of overtime damages per month from the date each portion of alleged damages were incurred until the end of November, 2021.

Any Class Member who opts out will not be entitled to his or her share of the Gross Settlement Amount, and he or she will not be a part of this Agreement or release any claims.

**Settlement Payment Schedule:** To effectuate this Settlement, Defendant has agreed to make a payment into a Qualified Settlement Fund ("QSF") as detailed in paragraph 41 of Exhibit B. In summation, Defendant will pay $220,617.00 into the QSF within 14 days of the Effective Date (the date when the Final Approval Order becomes unappealable, i.e. approximately 30 days from the Final Approval Order.) Attorneys' Fees and Costs, Administrative Costs and Service Awards will be paid solely from the QSF within 21 days after the Effective Date and Class Settlement Payments will be mailed within 21 days after the Effective Date. Appropriate taxes will be withheld from the Settlement Payments and calculated by the Administrator, Defendant shall pay into the fund additional employer payroll taxes that are necessary.

**Cy Press And Right of Reversion**: Remaining funds in the QSF ninety days after all Class settlement payments have been made, under $10,000, will be made a Cy Press award in equal part to Prairie State Legal Services and Christmas Without Cancer, NFP[1] or some other charitable legal aid organization of the Court's choosing. Any amount of remaining funds in excess of $10,000 will revert to Defendant pursuant paragraph 17 of to Exhibit B.

**Settlement Administrator Fees and Costs**: The parties have agreed to use Analytics LLC as the Settlement Administrator. The Administrator estimates that its fees and costs will be $10,000 and have agreed to cap their fees and costs at this number.

**Attorney Fees**: Class Counsel will request one-third of the Gross Settlement Fund as an award of attorney's fees. Additionally, Class Counsel seeks reimbursement of reasonable actual case-related costs and expenses from the Gross Settlement Amount, including but not limited to

---

[1] Christmas Without Cancer is an Illinois non-for-profit that "provides gifts and basic necessities to Chicagoland families with members stricken with cancer. https://christmaswithoutcancer.org/_who-we-are/

the filing fee and other expenses, one third of the Gross Settlement Amounts is $73,539. At this time, Class Counsel's costs are $420.00. Class Counsel agrees to cap its costs at this amount.

**Service Award:** Plaintiff seeks $7,500, as a Service Award for the services he rendered to the Class Members.

**Release**: The Class Members are not signing a general release for non-wage claims. In exchange for their respective Settlement Payments, the Class (excepting any persons who may choose to opt-out) are providing a release relating to their Illinois hourly wage-related claims as set forth in the Settlement Agreement. FLSA release language will be written on the settlement checks and by cashing their checks will be consenting to join the FLSA settlement and release their FLSA claims against Defendant. The signed consents on the settlement checks will be filed with the Court within 200 days of the issuance of the checks.

**Notice:** Notice to the Class Members will proceed by mailing through first class mail to each Class Member a copy of the parties' notice that details the approximate specific gross amount of money that is proposed to be paid to that employee. The Parties' proposed notice to the Class is attached to the Settlement Agreement and is attached to this motion as Exhibit C.

### V. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

**1.) Class Action Settlement Approval Process**

Approval of class action settlements is typically a three-step process:

(1) preliminary approval of the settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a "formal fairness hearing"[2] or final settlement approval hearing, at which class members may be heard

---

[2] At least one Court in the Northern District has decided that the need for class members to receive settlement money expeditiously during the current Covid-19 pandemic, outweighed the need for a formal fairness hearing after a notice period with no objections. *See Smith v. DTLR, Inc.,* 18-cv-07628 (N.D. Ill. April 29, 2020) J.Kennelly

regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented. *Manual for Complex Lit.*, at § 21.632–34.

This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement.

The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.,* § 11.25 at 11-36, 11-37. The decision to preliminarily approve a proposed settlement is in the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). If so, the court should grant preliminary approval of the settlement, authorize the Parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

**2.) The Criteria for Preliminary Settlement Approval Are Satisfied**

---

presiding.

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). At the preliminary approval stage, however, a court's task is to determine whether class settlement is within the range of possible approval. *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). The Settlement Agreement here meets these criteria and clearly falls "within the range of possible approval." *Cook,* 1997 U.S. Dist. LEXIS 1090, at *24-25 (citation omitted).

### a. Strength of Plaintiff's Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment

Here, the Class Members are recovering approximately 100% of unpaid overtime wages including FLSA liquidated damages and IMWL statutory damages for all class members. A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. However, "district courts have

8

been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to preliminarily approve a settlement, a district court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing the plaintiffs' claims. *Id.* A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate"). Plaintiffs believe that this case is an excellent result for Class Members. They are receiving everything they could have likely received at trial. This includes FLSA liquidated damages for each class member without requiring them join any FLSA collective class. Additionally, Plaintiffs had not yet obtained class certification. The Defendant had defenses in this case that the Pandemic Pay and Temp. Bonus payments did not need to be included in the regular rate or may have set-off overtime obligations, or that liquidated damages should not be awarded. By settling these claims, the Plaintiffs are assured of a recovery.

### b. Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendant would continue to vigorously defend the case. As discovery is in the early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would certainly result in dispositive motions, and the possibility of appeals. Additional litigation would

increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital*, 212 F.R.D. at 409-10. Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013). Moreover, it cannot be ignored that this settlement puts money in the hands of Class Members when they need it the most, as the nation continues to endure a world-wide pandemic.

### c. At This Preliminary Stage, There is No Opposition to the Settlement

The Plaintiffs support the settlement, as do their Counsel and Defendant. At this preliminary stage, Plaintiffs' Counsel is unaware of any opposition to the settlement.

### d. Opinion of Counsel

Plaintiffs' counsel has substantial experience in employment litigation and class action litigation and has attaches a Firm Resume and affidavit in support of this settlement as Exhibit D.1 and D.2. Plaintiff's Counsel had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Plaintiff's Counsel's opinion, the Settlement is fair, reasonable and adequate. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims and the time costs, as well as the expense of trials and appeals. When

experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted).

Defense Counsel is likewise experienced and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Defense Counsel's opinion, the Settlement is fair and more than adequate for the class members. It is possible that should this matter be fully defended up to and at trial, each class member may have *less* proven damages than what they are currently awarded in this settlement. It is in all parties' best interests to settle this matter to ensure payment to a class.

### e. The Settlement Was the Result of Arm's Length Negotiations Without Any Collusion.

The Settlement was the result of adversarial, arm's length negotiations for several months and after reviewing payroll data produced by Defendant. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair"). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2,

1996). The Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

## VI. THE PARTIES PROPOSED NOTICE PROGRAM

The notice procedure identified in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). The Parties' proposed notice procedure meets the requirements of Rule 23.

## VII. SCHEDULING OF A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e).

## VIII. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

### 1.) PROPOSED CLASS ACTION DEFINITION

The "Class Member" or "Settlement Class Member" is defined as all current and former employees of Defendant who earned Temporary Pandemic Pay or Temp. Bonus and worked overtime during the Class Period and whose name or employee ID appears on Exhibit 2 to the Settlement Agreement. Excluded from the Settlement Class are those that exclude themselves and those whose notices are undeliverable. The Class is ascertainable, and it consists of those 777

persons who are identified on Exhibit 2 to the Settlement Agreement. Exhibit 2 also contains the estimated recovery after accounting for the requested attorneys' fees and costs, administrator fee and service award.

### 2.) The Plaintiff Class Meets All Four Requirements of FRCP 23(a).

#### a. Numerosity

The Federal Rules of Civil Procedure require that the class be so large as to render joinder of all parties impracticable. Fed. R. Civ. P. 23(a)(1). There are 777 Class members and this easily meets the numerosity standard. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)(concluding that "generally . . . more than forty [is] adequate"); *see Fletcher v. ZLB Behring LLC,* 245 F.R.D. 328, 336 (N.D. Ill. 2006)("[C]ourts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement."); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967) (18 members sufficient). As such, the numerosity standard is met.

#### b. Commonality

The second requirement for class certification, as set forth in Rule 23(a)(2), is that there must be "questions of law or fact common to the class." "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2562 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556. "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). The common question here is whether Defendant improperly calculated the regular rate of pay when paying overtime to employees.

c.     **Typicality**

Plaintiff meets the typicality requirement because all employees, including the named plaintiffs, were under the same policies set by Defendant. "[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011); *see also Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"). Defendant utilizes the same policy of calculating the regular rate of pay for overtime purposes. As such, Plaintiff's claims arise out of the same course of conduct and the same payment practices.

d.     **Adequacy**

The final requirement for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." In the instant case, Plaintiff worked for Defendant and alleged he suffered from overtime underpayments and were under the same allegedly unlawful practice as all other non-exempt employees. They have been cooperative throughout this litigation. As the Supreme Court has noted, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Plaintiffs' claims pose no conflicts whatsoever with those of the other Class members because their claims and those of the entire Class turn on the existence and implementation of certain wage policies, which are alleged to have improperly calculated the regular rate for overtime purposes. Therefore, Plaintiffs' financial interests are not in conflict with those of other Class members. Adequate representation also requires competent and experienced counsel able to conduct the litigation. *Amchem*, 521 U.S. at 625; *Eggleston*, 657 F.2d at 896. While experience in class action litigation is a factor favoring

14

counsel's qualification, general litigation skills and federal court experience are also pertinent. Fed. R. Civ. P. 23(g). Plaintiffs' counsel has substantial experience in employment litigation and class action litigation and has attached a resume in support of this settlement as Exhibit D.

**3.) Plaintiffs Meet the Requirements of FRCP 23(b)(2).**

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiff meets the requirements of Rule 23(b)(2).

**4.) Plaintiff Meets the Requirements of FRCP 23(b)(3).**

FRCP 23(b)(3) requires a showing that: (1) issues common to the class "predominate" over those affecting individual class members; and (2) prosecuting the litigation as a class action is "superior" to other available methods of proceeding. *Amchem*, 521 U.S. at 615. When making this inquiry, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D). Considering these factors, both the "predominance" and the "superiority" requirements are met in the present action.

**a. Predominance**

The standard to determine whether common questions predominate is a flexible one, focusing on whether the common issues are a significant enough part of the case that proceeding as a class action makes sense. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *see also*, *e.g., Jenkins* v. *Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986)("In order to 'predominate,' common issues must constitute a significant part of the individual cases."); *In re Playmobil,* 35 F. Supp. 2d at 245 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the

15

common questions to render the class action valueless."). Not all questions of law or fact need to be identical as long as there are common questions at the heart of the case. *Hubler,* 193 F.R.D. at 577. The significant issue is whether "the class claims arise out of the same legal or remedial theory." *Id.* The predominance requirement is satisfied. The most significant factual issue is whether Defendant properly paid their employees. This will boil down to an analysis of whether the overtime rate was properly calculated and whether employees were properly paid.

The only issue in the instant case that could be individual to each class member is damages. But it is well-established that individual damages issues do not defeat a finding that common liability issues predominate under Rule 23(b)(3). *Gomez v. PNC Nationl Bank Assn,* 2014 WL 3640798, 12 c 1274 (N.D. Ill. 2014) (class certification appropriate even if some members did not perform unpaid work because this relates to damages); *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998).

### b. Superiority

The specific factors set forth in Rule 23(b)(3) dictate the superiority of this case proceeding as a class action. When inquiring into the matters pertinent to the findings of predominance and superiority, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D).

There is no compelling reason to adjudicate 777 identical separate actions. Because of the uniformity of the factual and legal claims of the Class members, it would be needlessly repetitive if the Class members were forced to prosecute their claims individually. A class action in the case at bar meets the superiority test of Rule 23(b)(3) because the difficulties and expense of prosecuting this type of litigation would be counterproductive for both parties. With multiple claims, Defendant's legal expenses (owed to attorneys for both sides) could be greater than the

overall damages at stake in the class action.

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs pray for an order (in the form attached hereto as Exhibit A):

i. Granting preliminary approval of the Settlement in this matter;
ii. Certifying the proposed Class;
iii. Approving the form and content of the Notice to be sent to Class Members;
iv. Appointing Named Plaintiff Victor Sanchez, as Class Representatives;
v. Approving the appointment of Plaintiff-Class Counsel;
vi. Scheduling a final fairness hearing;
vii. Granting such other relief as the Court deems appropriate under the circumstances.

Dated: January 28, 2022

Respectfully Submitted,

By: _____/s/ John Kunze_____
One of Plaintiff's Attorneys

David Fish
John Kunze
Fish Potter Bolaños, P.C.
200 E 5th Ave Suite 123
Naperville, IL 60563
T: 312-8611800
F: 630-778-0400
dfish@fishlawfirm.com
kunze@fishlawfirm.com

17